UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal No. 13- 035 (ESH) |
| v. | : | |
| AISHA MAYO, | : | Plea Disposition: |
| Defendant. | : | |

**FILED**

FEB 2 2 2013

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

## STATEMENT OF THE OFFENSE

Had this case proceeded to trial, the government would have proven the following facts beyond a reasonable doubt:

**A.** **Overview Regarding Tax Matters**

At all times relevant herein:

The Internal Revenue Service (IRS) is an agency of the United States of America, Department of the Treasury, maintaining its headquarters at 1111 Constitution Avenue, NW, Washington, D.C. The IRS has responsibility for administering provisions of the Internal Revenue Code and for the collection of income taxes.

Absent the grant of an extension, individuals who earn income in excess of certain minimums are required to file a Form 1040 U.S. Individual Income Tax Return no later than April 15th of the calendar year immediately following the tax year.

A Form 1040 is a tax form used by an individual to report taxable income from wages and/or from self-employment. An activity qualifies as a business if the primary purpose for engaging in the activity is for income or profit and the taxpayer is involved in the activity with continuity and regularity.

A Schedule C - Net Profit From Business is used to report profit or loss from a sole proprietorship. The form supports and is attached to an individual's Form 1040. Profit or loss reflected on the Schedule C, is also reported on the Form 1040. A Schedule C-EZ is a simplified version of the Schedule C, which is used when, among other factors, business expenses do not exceed $5,000, and the business has no employees or inventory.

Adjusted Gross Income is total gross income minus specific reductions.

The Earned Income Tax Credit (EITC), is a tax credit intended to help taxpayers keep more of what they earn. It is a refundable federal income tax credit for low- to moderate-income working individuals and families. Congress originally approved the tax credit legislation in 1975 in part to offset the burden of social security taxes and to provide an incentive to work. When EITC exceeds the amount of taxes owed, it results in a tax refund to those who claim and qualify for the credit. In order to qualify, the taxpayer must meet certain requirements and file a tax return, even if the taxpayer does not owe any tax or is not required to file an income tax return.

**B.     The Identity Theft and False Claims for Federal Income Tax Refund Conspiracy**

At all times relevant herein, an extensive network of over 100 individuals, many of whom were receiving some type of public assistance, engaged in a massive sophisticated identity theft and false tax refund scheme in the District of Columbia and elsewhere, seeking over $20 million in fraudulently claimed income tax refunds. During the approximate period 2006 through present (for tax years 2005 through 2012) the co-conspirators caused the filing of at least 7,000 fraudulent federal income tax returns listing one of over 436 addresses located in the District of Columbia as the "taxpayer" address. Some of the addresses were used to file more than 100 fraudulent federal income tax returns in a single year.

Identity theft victims whose identifying information was used on fraudulent federal income tax returns include the elderly; those living in assisted living (including Alzheimer's patients and the disabled, including amputees); drug addicts; and incarcerated prisoners. Identifying information of deceased persons and of children whose parents sold their child's name, date of birth, and social security number was also utilized.

The co-conspirators utilized the stolen means of identification, including names and social security numbers, of at least 14 patients of a nursing home, ten of whom were over the age of 65 when their stolen identities were used. The patients whose identifying information was stolen included: "A. W.," "C. S.," "E. G.," "F. R.," "H. H.," "J. R.," "J. J.," "J. I.," "M. W.," "M. T.," "R. E.," "R. J.," "S. B.," and "W. H." Five of these individuals, "E. G.," "H. H.," "J. R.," "J. J," and "W. H." were deceased at the time when their means of identification was used in the scheme alleged herein.

The tax fraud scheme involved using inflated Adjusted Gross Income (AGI), by creating and utilizing fraudulent Schedules C to reflect income sufficient to generate a tax refund based upon the Earned Income Tax Credit.

The scheme involved co-conspirators operating at various levels, each being financially compensated for his or her particular role, including:

A.  Those agreeing to allow their personal identifying information to be used on one or more fraudulent federal income tax returns. If the "taxpayer" was a willing participant in the scheme who provided his or her identifying information to a co-conspirator, the "taxpayer" would accompany a co-conspirator to a check cashing service, liquor store or financial institution to negotiate the check.

B.     Those permitting their residential address to be used for the delivery of U.S. Treasury checks, which were federal income tax refunds, in the names of persons who did not in fact reside at the address;

C.     Those opening a bank account or using an existing bank account for the purpose of negotiating fraudulently obtained U.S. Treasury checks, which were federal income tax refunds, issued in the names of third parties, including victims of identity theft;

D.     Those forging the endorsement of an identity theft victim on the back of a U.S. treasury check which was a fraudulently obtained federal income tax refund;

E.     Those stealing the personal identifying information of patients who were incapacitated and residing at a nursing facility, patients receiving treatment at medical facilities, persons who were incarcerated, and deceased persons, which information would be used in the scheme;

F.     Employees of financial institutions who facilitated the negotiation of fraudulently obtained U.S. Treasury checks, which were federal income tax refunds.

G.     One or more U.S. Postal Service Mail Carriers who facilitated the delivery to co-conspirators of fraudulently obtained U.S. Treasury checks, which were federal income tax refunds.

H.     Those creating and mailing to the Internal Revenue Service fraudulent federal income tax returns, Forms 1040, which contained either stolen or purchased means of identification, forged "taxpayer" signatures, and which listed as the "taxpayer's" residential address the address of a co-conspirator or associate, and falsely claimed that the "taxpayer" operated a Schedule C business as a "barber," claiming income sufficient to generate a tax refund based upon the EITC, and also

fraudulently claimed dependents, who were not the dependents of the "taxpayer" listed on the income tax returns, resulting in the issuance of a fraudulent federal income tax refund.

The identity theft victims in this case were unaware that their means of identification was being used to file income tax returns, did not receive the U.S. Treasury checks which were fraudulent income tax refunds, and did not endorse the checks or receive any of the proceeds. In addition, the identity theft victims are not related to the "dependents" listed on the fraudulent income tax returns, never resided at the addresses listed on the fraudulent federal income tax returns or on the Treasury checks that were issued, and never worked as barbers.

In some cases, individuals unwittingly turned over their identifying information to a co-conspirator after being told that they were due an income tax refund or were entitled to some "Obama Stimulus Money."

Unindicted co-conspirators who agreed to have the fraudulent U.S. Treasury checks, which were federal income tax refunds, mailed to their residence typically received in exchange approximately $150 per check. Those who negotiated such checks typically received in exchange approximately $250 per check. Larger amounts of money were earned by those who solicited others to allow their addresses to be used for the receipt of fraudulently obtained U.S. Treasury checks and those who masterminded the scheme and created and mailed the fraudulent federal income tax returns.

All of the fraudulent income tax returns sought refunds. Many of the said tax returns listed the "taxpayer's" home address as an address located in the District of Columbia. District of Columbia taxpayers seeking a federal income tax refund are required to file their income tax return

with the IRS Service Center in Kansas City, Missouri. In an apparent effort to frustrate IRS fraud detection efforts, the returns filed were mailed to various IRS Service Centers, nationwide.

For the approximate period 2006 to present, the above-described scheme caused the filing of at least 7,000 fraudulent federal income tax returns, Forms 1040, seeking income tax refunds of at least $20 million, and caused the issuance of fraudulent U.S. Treasury checks, that is income tax refunds, which were delivered to various addresses located in the District of Columbia and elsewhere.

### C.     Defendant Aisha Mayo's Role in the Scheme

Beginning during 2009, and continuing until on or about April 3, 2012, the defendant, **AISHA MAYO,** was employed as a bank teller with Wells Fargo Bank, a financial institution, located in Landover, Maryland.

From on or about October 4, 2011, and continuing until on or about April 3, 2012, the defendant, **AISHA MAYO,** received from an unindicted co-conspirator, approximately 62 U.S. Treasury checks, totaling approximately $226,558.20, which were fraudulent income tax refunds generated through the scheme described herein, and deposited said checks into 59 different Wells Fargo Bank customer bank accounts, in Maryland, without the account holders' knowledge. When the checks cleared, the defendant, **AISHA MAYO**, obtained the proceeds, kept approximately $200 to $300 per check, and gave the balance of the funds to an unindicted co-conspirator. Forty-two of the U.S. Treasury checks bear and had been mailed to "taxpayer" addresses located in the District of Columbia.

From on or about October 4, 2011, and continuing until on or about April 3, 2012, within the District of Columbia and elsewhere, the defendant, **AISHA MAYO,** unindicted co-conspirator "A.R.," and other individuals whose identities are known and unknown, did unlawfully, knowingly, and willfully, conspire and agree together and with each other, to defraud the United States of America and an agency thereof, that is the Internal Revenue Service, of monies in the approximate amount of $226,558.20 through the filing of 62 fraudulent Form 1040 U.S. Individual Income Tax Returns, and the negotiation of 62 U.S. Treasury checks, which were fraudulent income tax refunds.

It was the goal of the conspiracy that the defendant, **AISHA MAYO,** unindicted co-conspirator "A.R.," and other individuals whose identities are known and unknown, would enrich themselves and obtain money by negotiating U.S. Treasury checks, which were federal income tax refunds, generated by filing fraudulent Form 1040 U.S. Individual Income Tax Returns, the Schedule C-EZ Net Profit From Business, attached and in support of which, falsely claimed that each "taxpayer" had operated a sole proprietorship during the tax year and falsely stated that the "taxpayer" had gross receipts and at least two dependent children, when in fact, the "taxpayer" was either a victim of identity theft, was misled into providing his or her identifying information or was a willing participant in the scheme; no such business had been operated by the "taxpayer;" and the "taxpayer" had no such dependents; all of which caused fraudulent income tax refunds to be issued via U.S. Treasury checks that were mailed to various addresses located in the District of Columbia and elsewhere.

In order to further the objects and goals of the conspiracy, the defendant, **AISHA MAYO**, unindicted co-conspirator "A.R.," and other individuals whose identities are known and unknown, used the following manners and means, among others:

A.  The defendant, **AISHA MAYO**, would agree to receive from unindicted co-conspirator "A.R.," a U.S. Treasury check, which was a fraudulent income tax refund obtained in the course of the scheme described herein.

B.  The defendant, **AISHA MAYO**, would take the check to Wells Fargo Bank, a financial institution located in Landover, Maryland, where she was employed as a bank teller.

C.  The defendant, **AISHA MAYO**, would generally look through bank records to find customer accounts that had large dollar balances and would deposit one or more said U.S. Treasury checks into a particular customer bank account without the customer's knowledge.

D.  The defendant, **AISHA MAYO**, would contact unindicted co-conspirator "A.R." when a U.S. Treasury check had cleared the check negotiation process.

E.  The defendant, **AISHA MAYO**, would keep a portion of the proceeds, approximately $200 to 300 per check.

F.  The defendant, **AISHA MAYO**, would meet with unindicted co-conspirator "A.R." and give the balance of the check proceeds to that person.

G.  Other unindicted co-conspirators, known and unknown, would receive a portion of the check proceeds.

Within the District of Columbia, and elsewhere, in furtherance of the above-described conspiracy and in order to carry out the objects thereof, the defendant, **AISHA MAYO**, unindicted co-conspirator "A.R.," and other individuals whose identities are known and unknown, committed the following overt acts, among others:

A.  On or about October 4, 2011, the defendant, **AISHA MAYO**, received a U.S. Treasury check, dated September 23, 2011, in the amount of $3,380, bearing an address located in Washington, D.C.

B.  On or about October 4, 2011, the defendant, **AISHA MAYO**, deposited the check described above, into bank account number XXXXXXXXX-8231 at Wells Fargo Bank, in Landover, Maryland, causing the check to be negotiated.

C. On or about October 4, 2011, the defendant, **AISHA MAYO** retained a portion and provided the remainder of the $3,380 in check proceeds to unindicted co-conspirator "A.R."

>RONALD C. MACHEN JR.
>UNITED STATES ATTORNEY
>and for the District of Columbia
>D.C. Bar No. 447889
>
>By: _____
>SHERRI L. SCHORNSTEIN
>Assistant U.S. Attorney
>D.C. Bar No. 415219
>555 4th Street, N.W.
>Washington, D.C. 20530
>(202) 252-7883

I declare under penalty of perjury that the foregoing is a true and accurate statement of facts and accurately sets forth a portion of my conduct in connection with this case.

2/22/13
_____
Date
_____
Aisha Mayo, Defendant